IN THE UNITED STATES DISTRICT COURT

                          FOR THE DISTRICT OF OREGON


**LENNIE T. DAVIDSON,**                          10-CV-575-BR

        Plaintiff,
                                                 OPINION AND ORDER
v.

**MAX WILLIAMS, Director of
Prisons; COUNSELOR RUFFCORN;
ALECA NELSON; MR. SCHUTTS;
and V. WILSON,**

        Defendants.


**LENNIE T. DAVIDSON**
309 S.W. Fourth Avenue, Room 411
Portland, OR 97204
(503) 839-0922

        Plaintiff, *Pro Se*


1 - OPINION AND ORDER

**JOHN KROGER**
Attorney General
**MICHAEL R WASHINGTON**
Assistant Attorney General
1162 Court Street N.E.
Salem, OR 97301-4096
(503) 947-4700

      Attorneys for Defendants

**BROWN, Judge.**

      This matter comes before the Court on Defendants' Unenumerated 12B Motion (#25) to Dismiss, Plaintiff's Motion (#32), Plaintiff's Motion (#33) for Judgment, and Plaintiff's Motions (#42, #43) to Dismiss.  For the reasons that follow, the Court **GRANTS** Defendants' Motion and **DENIES** Plaintiff's Motions.

## BACKGROUND

      Plaintiff Lennie T. Davidson was an inmate at Two Rivers Correctional Institution (TRCI) during the relevant period. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 on the ground that Defendants violated his right to be free from cruel and unusual punishment when they denied his right to make a telephone call to his girlfriend who was dying of cancer. Plaintiff also appears to allege a claim for disability discrimination on the ground that he was moved from TRCI's "minimum housing facility" because he is handicapped.  Defendants

move to dismiss Plaintiff's claims on the ground that Plaintiff has not exhausted his administrative remedies.

**STANDARDS**

In the Ninth Circuit, failure to exhaust administrative remedies "should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment."  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  To decide a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact.  *Id.* at 1119-20.

Unlike summary judgment, dismissal for failure to exhaust administrative remedies is not a decision on the merits.  *Id.* "If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."  *Id.* at 1120.

**DISCUSSION**

I.  **Prison Litigation Reform Act (PLRA) Exhaustion Requirement**

As noted, Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation

3 - OPINION AND ORDER

>    of any rights, privileges, or immunities secured
>    by the Constitution and laws, shall be liable to
>    the party injured in an action at law.

Section 1983 creates a private right of action against persons who, acting under color of state law, violate federal constitutional or statutory rights. *Devereaux v. Abbey,* 263 F.3d 1070, 1074 (9th Cir. 2001). The PLRA was amended to provide "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandated regardless of the relief offered through the prison administrative procedures. *Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819, 1825 (2001).

The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In addition, the Supreme Court held in *Booth* that prisoners are obligated to navigate the prison's administrative review process "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." 532 U.S. at 739-41. Accordingly, the Ninth Circuit has held "plaintiffs must pursue a remedy through a prison grievance process as long as *some* action

4 - OPINION AND ORDER

can be ordered in response to the complaint." *Brown v. Valoff*, 422 F.3d 926, 934 (9th Cir. 2005)(emphasis in original). Even if the relief the prisoner receives is nothing more than "corrective action taken in response to an inmate's grievance [that] . . . improve[s] prison administration and satisf[ies] the inmate," it is sufficient relief for an inmate to continue with the administrative process. *Id*. at 936 (quoting *Porter*, 534 U.S. at 525).

Exhaustion of administrative remedies under 42 U.S.C. § 1997e(e) is an affirmative defense. *Wyatt*, 280 F.3d at 1245. "[D]efendants have the burden of raising and proving the absence of exhaustion." *Id.* at 1120.

> Relevant evidence in so demonstrating would include . . . regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case.

*Brown*, 422 F.3d at 937. As noted, if the court concludes an inmate has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Wyatt*, 315 F.3d at 1119-20.

**II. Analysis**

    **A. Plaintiff's claim for cruel and unusual punishment on the ground that he was denied a telephone call.**

As noted, Plaintiff alleges Defendants violated his right to be free from cruel and unusual punishment when

5 - OPINION AND ORDER

Defendants denied Plaintiff the right to make a telephone call to his girlfriend who was dying of cancer.  Defendants move to dismiss this claim on the ground that Plaintiff failed to exhaust his administrative remedies.

      Pursuant to the administrative rules governing inmate grievances of the Oregon Department of Corrections (ODOC), inmates at ODOC facilities are required to communicate with "line staff" verbally or in writing to resolve a dispute before filing a grievance.  If communication with line staff does not resolve an inmate's issue, the inmate may then file a grievance form within 30 days of the incident or conflict.  Inmates must attach copies of their previous communications with line staff to their grievance forms to demonstrate that they attempted to resolve the conflict informally before filing their grievance.  If an inmate is not satisfied with the response to his or her grievance, the inmate may file an appeal to the functional unit manager by completing a grievance appeal form and filing it with the grievance coordinator within 14 days from the time the response was sent to the inmate.  The grievance coordinator then assigns the grievance a number and records it in the grievance log.

      An inmate may appeal the functional unit manager's decision by submitting to the assistant director an appeal form, the original grievance, attachments, and staff responses.  The grievance coordinator then date-stamps and logs the appeal.  The

6 - OPINION AND ORDER

decision of the assistant director is final and is not subject to further review.

ODOC informs inmates of the grievance procedure at their mandatory Admission and Orientation class held when inmates first arrive at a facility.  In addition, information about the procedure is contained in the inmate handbook.  Inmates may obtain grievance forms and instructions from any housing-unit officer.

The record reflects a number of grievances filed by Plaintiff, but none of those grievances reflect Plaintiff ever grieved the issue of denial of a telephone call.  On this record, therefore, the Court concludes Plaintiff did not exhaust the required administrative procedures as to his claim for cruel and unusual punishment for the denial of a telephone call.

**B.   Plaintiff's discrimination claim.**

As noted, Plaintiff also appears to allege a claim for disability discrimination on the ground that he was moved from TRCI's "minimum housing facility" because he is handicapped. Defendants move to dismiss this claim on the ground that Plaintiff failed to exhaust his administrative remedies.

ODOC administrative rules governing discrimination complaints require "[a]ny inmate who believes that he/she . . . is subjected to discrimination on the basis of . . . handicap, may themselves . . . file a written complaint" with the

7 - OPINION AND ORDER

functional unit manager of the unit to which the inmate is assigned. Decl. of Vicki Reynolds, Ex. 6 at 2. In addition, an inmate "shall be entitled to review by a person or other entity, not under the supervision or control of the functional unit to which the inmate is assigned. This review shall be processed from initiation to final disposition within 90 days." Reynolds Decl., Ex. 6 at 3.

The record reflects Plaintiff submitted a discrimination complaint on May 29, 2008, in which he claimed he was removed from TRCI's minimum-security housing facility because he is handicapped. Reynolds Decl., Ex. 7 at 1. On October 30, 2008, Captain D. Thornton responded to Plaintiff's discrimination complaint as follows: (1) Plaintiff was moved to the minimum-security facility in error in the first place because "inmates who are medically unassigned or medical [sic] idle will not be housed in the TRCI minimum [as it] is considered a working unit"; (2) Plaintiff is medically restricted from TRCI minimum security; (3) Plaintiff is prevented from "being moved to most of the minimums" because Plaintiff is medically restricted to a single-level institution; and (4) there is not any "inherent right for any inmate to be housed in a specific custody level institution." Reynolds Decl., Ex. 7 at 2.

On December 26, 2008, Superintendent Don Mills responded to Plaintiff's discrimination complaint and stated

8 - OPINION AND ORDER

Plaintiff had been working with A. Nelson, Executive Assistant and Minority Affairs Officer, and also "had been working out [his alleged discrimination] issue with Health Services."  Reynolds Decl., Ex. 7 at 3.  Mills noted Nelson had advised Plaintiff on July 9, 2008, that Plaintiff had been returned to the medium-security facility because Health Services had medically restricted Plaintiff from work assignments for one year.  Reynolds Decl., Ex. 7 at 3.  Nelson also advised Plaintiff that Health Services had "confirmed" that Plaintiff did not meet the criteria for "handicapped status" because Plaintiff does not have "a physical or mental impairment that limits one or more life activities."  Reynolds Decl., Ex. 7 at 3.  Nelson told Plaintiff that "medical records indicate [Plaintiff was] choosing not to follow the medical regimen that would remove the health services restriction."  Reynolds Decl., Ex. 7 at 3.  Mills noted Plaintiff met with Nelson on October 10, 2008, and discussed Plaintiff's desire to return to the minimum security unit.  Mills also noted Plaintiff signed up for sick call October 11, 2008; his medical restrictions were "subsequently lifted"; and Plaintiff was returned to the minimum-security unit on November 6, 2008.  Reynolds Decl., Ex. 7 at 3.  In summary, Mills reported Nelson had worked with Plaintiff to address his concerns, the process for transferring to other institutions was reviewed, and Plaintiff was returned to the minimum-security unit after he

9 - OPINION AND ORDER

complied with his medical regimen.  Plaintiff did not appeal Superintendent Mills's response to his grievance.

Defendants contend Plaintiff did not exhaust the required administrative procedures as to his discrimination complaint because he failed to appeal his discrimination complaint through the entire administrative process.  In response Plaintiff contends ODOC violated "administrative rule 44-15-201 [entitled] Special Procedures; Special Kinds of Problems" because it failed to consider a letter that Plaintiff wrote to ODOC Director Max Williams in an effort to comply with the grievance- and discrimination-complaint process.  As Defendants note, however, Administrative Rule 44-15-201 is an administrative regulation addressing the grievance procedure for inmates of the State of Kansas Department of Corrections (KDOC).  Plaintiff does not point to any authority nor could this Court find any authority to support Plaintiff's assertion that ODOC must follow the administrative procedures for the KDOC.  The Court, therefore, concludes Plaintiff has not exhausted his administrative remedies as to his discrimination complaint.

Accordingly, the Court grants Defendants' Unenumerated 12B Motion to Dismiss.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Unenumerated

10 - OPINION AND ORDER

12B Motion (#25) to Dismiss; **DENIES** Plaintiff's Motion (#32), Plaintiff's Motion (#33) for Judgment, and Plaintiff's Motions (#42, #43) to Dismiss and **DISMISSES** this matter **without prejudice**.

    IT IS SO ORDERED.

    DATED this 23rd day of May, 2011.

                              /s/ Anna J. Brown

                              ANNA J. BROWN
                              United States District Judge